UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re MICROSOFT PARTNER PROGRAM LITIGATION

This Document Relates To:

C05-1922P (Will)

NO. C05-1922P

ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on a motion to dismiss filed by Defendants Catherine Will and Philip Parana. (Dkt. No. 6). Defendants seek dismissal of all claims asserted by Plaintiff Microsoft Corporation in this action. By prior order, the Court indicated that it would limit this motion to one brought pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) and that the Court would not consider materials outside the pleadings that would convert this motion into a summary judgment motion under Rule 56.

The Court, having considered the relevant papers and pleadings submitted by the parties and having heard oral argument on this matter, hereby GRANTS IN PART and DENIES IN PART Defendants' motion. Defendants correctly maintain that Plaintiff has not pleaded its fraud claims with the particularity required by Rule 9(b). However, because it appears possible that Plaintiff may be able to correct this pleading defect, the Court grants Plaintiff leave to amend its complaint. Plaintiff shall

ORDER - 1

file an amended complaint within <u>twenty (20) days</u> of the date of this Order. The Court denies Defendants' motion to the extent it seeks dismissal of Plaintiff's breach of contract, Washington Consumer Protection Act, and conversion claims. The reasons for the Court's order are set forth below.

**Background**

1. <u>Microsoft's Complaint</u>

On November 18, 2005, Microsoft filed seven similar complaints in this Court, which were assigned cause numbers C05-1922 through C05-1928. These cases have been consolidated for pre-trial proceedings. Catherine Will and Philip Parana of Buffalo, New York were named as the defendants in the case assigned cause number C05-1922P.

In its complaint, Microsoft alleges that it has created a program called the "Microsoft Partner Program" (MSPP). According to Microsoft, the program was created to develop relationships with partners (such as software developers, resellers, and consultants) who distribute or influence the acquisition of Microsoft software and "Microsoft-based solutions" by end users. Microsoft alleges that to enroll in the MSPP program, participants must accept an agreement known as the "MSPP Agreement" and provide "certain identification and qualification data."

Microsoft asserts that registered members of the MSPP program are eligible to participate in a program called the "MSPP Action Pack Initiative." Through the Action Pack Initiative, a member obtains an annual subscription and license to use a large group of Microsoft software. Microsoft alleges that the software products provided under the Action Pack Initiative have a full retail value exceeding $50,000, but are provided to subscribing partners for an annual subscription fee of only $299.

Microsoft alleges that subscribers to the Action Pack Initiative must execute an agreement called the Microsoft Partner Program Action Pack Initiative Addendum ("the Addendum"), which provides that participants may only subscribe to the Initiative once per year. The Addendum also

ORDER - 2

provides that a registered member must use the software only at its primary business location, and only for internal business purposes, application development, and testing. In addition, the Addendum requires that the software "may NOT be resold, transferred, or assigned to any third party." Microsoft also claims that most of the software provided under the Action Pack Initiative comes with its own licensing agreement, and is clearly labeled with restrictions on distribution and resale.

Microsoft alleges that Defendants have engaged in the following unlawful conduct:

* Defendants have engaged in a scheme to defraud Microsoft and to obtain numerous bundles of Microsoft's Action Pack Initiative software which Defendants have then sold at retail.

* Defendants have obtained multiple bundles of software by registering multiple times to the MSPP program and to the Action Pack Initiative, in violation of the terms of the Addendum.

* In an attempt to mislead Microsoft and to avoid discovery of their improper, multiple registrations, Defendants have used fictitious registration information or variations of their original registration information.

* After acquiring the software bundles at the price of $299, Defendants have resold the software, transferred the software, or made the software available for sale in violation of Defendants' contractual obligations.

(Complaint ¶¶ 14-17).

Microsoft's complaint raises four claims: (1) breach of contract; (2) fraud; (3) Washington CPA violations; and (4) conversion.

2. Procedural History

In January 2006, Defendants Will and Parana filed a motion titled "motion to dismiss complaint and for judgment on the pleadings pursuant to Rule 9(b), 12(b)(2), 12(b)(6) and 56." Defendants argued that Microsoft's complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim and pursuant to Rule 9(b) for failure to plead fraud with particularity. Defendants also argued that the Court lacks personal jurisdiction over Ms. Will. In support of this motion, Defendants offered evidence outside of the pleadings, including an affidavit by Mr. Parana. In response, Microsoft

ORDER - 3

requested a continuance of the motion, arguing that Defendants were prematurely seeking summary judgment before any discovery had been conducted.

The Court agreed that it would be premature to consider a request for summary judgment before any discovery had been conducted. The Court also agreed that Microsoft was entitled to some discovery before responding to Ms. Will's claims that the Court lacked personal jurisdiction over her. However, the Court held that it was proper for Defendants to move to dismiss Plaintiff's claims under Rules 12(b)(6) and 9(b) before discovery was conducted. Therefore, the Court limited this motion to one brought under Rules 12(b)(6) and 9(b). The Court advised the parties that it would not consider materials outside the pleadings that would convert this motion into a motion for summary judgment under Rule 56 and that it would not consider personal jurisdiction arguments until Microsoft had an opportunity to conduct discovery.

**Analysis**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). All allegations of material fact are construed in a light most favorable to the non-moving party. Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir. 1995). In ruling on a motion to dismiss, the Court may consider documents whose contents are alleged in a complaint and whose authenticity no party questions. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999).

1.  Failure to Plead Fraud with Particularity

Defendants argue that Microsoft's fraud claims should be dismissed with prejudice for failure to plead fraud with the particularity required by Rule 9(b). This rule provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

As Microsoft acknowledges, a plaintiff pleading fraud must state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."

ORDER - 4

1 Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). Here,
2 however, Microsoft's complaint does not identify the time or place of the misrepresentations with any
3 specificity, nor has it set forth the specific content of the allegedly false representations.

4      Microsoft suggests that "[s]o long as defendants receive sufficient notice of the alleged
5 conduct, there is no requirement that the allegations be detailed or complex." (Opp. at 14). In
6 support of this contention, Microsoft cites In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir.
7 1994), where the court indicated that "in certain cases . . . the requisite particularity might be supplied
8 with great simplicity." However, allowing fraud to be pleaded with "great simplicity" in certain cases
9 does not mean that a party may be excused from stating the time, place, and specific content of false
10 representations simply because the plaintiff believes that the defendant has "sufficient notice" of the
11 alleged conduct.

12      Microsoft also notes that one court has stated that "where fraud allegedly occurred over a
13 period of time, the requirements of 9(b) are less stringently applied." Fujisawa Pharm. Co. v. Kapoor,
14 814 F. Supp. 720, 726 (N.D. Ill. 1993). However, this Court is not bound by the Fujisawa decision,
15 and other courts have declined to adopt the pleading standard permitted by the Fujisawa court. See,
16 e.g., Yuhasz v. Brush Wellman, Inc., 181 F. Supp. 2d 785, 792-93 (N.D. Ohio 2001).

17      Therefore, the Court finds that Microsoft has not pleaded fraud with the particularity required
18 by Rule 9(b). As a result, the fraud claims are subject to dismissal. However, a failure to plead fraud
19 with particularity usually does not result in dismissal with prejudice; instead, the plaintiff is generally
20 granted leave to amend to plead fraud with the requisite particularity. See, e.g., Vess v. Ciba-Geigy
21 Corp. USA, 317 F.3d 1097, 1088-89 (9th Cir. 2003) (noting that dismissal for failure to comply with
22 Rule 9(b) should ordinarily be without prejudice and that leave to amend should be granted if it
23 appears at all possible that the plaintiff can correct the defect). Here, it appears possible that
24 Microsoft may be able to amend the complaint to state the time, place, and specific content of the
25 alleged misrepresentations.

26 ORDER - 5

1  Defendants suggest that leave to amend should be denied because "Microsoft's fraud claim rests on the allegation that defendants misrepresented their intent to fulfill a future promise" and that such an allegation cannot provide the basis for a fraud claim because it is not a misrepresentation of an existing fact. (Reply at 6). However, it appears that Microsoft is not simply alleging this type of misrepresentation. For example, Microsoft alleges that "[i]n an attempt to mislead Microsoft and to avoid discovery of their improper, multiple registrations, defendants have used fictitious registration information or variations of their original registration information." (Complaint ¶ 16). In addition, Microsoft noted at oral argument that the Washington Supreme Court has held that "if a promise is made for the purpose of deceiving and with no intention to perform, it constitutes such fraud as will support an action for deceit" and that "if the promise is made without care or concern whether it will be kept, and the promisor knows or under the circumstances should know that the promisee will be induce to act or refrain from acting to his detriment, the promise will likewise support an action by the promisee." Markov v. ABC Transfer & Storage Co., 76 Wn.2d 388, 396 (1969).

Therefore, the Court will grant Microsoft leave to amend its complaint. An amended complaint must be filed within twenty (20) days of the date of this order.

2.  Breach of Contract Claims

Defendants argue that Microsoft's ability to bring a breach of contract claim is restricted by Section 7.1 of the MSPP Agreement, which is a limitation of liability provision. This provision reads as follows:

> **In the absence of fraud or gross negligence, neither party will be liable to the other for any loss (whether direct or indirect) of profits, data, business or anticipated savings. In addition, there is no liability for any other indirect, consequential, punitive, incidental or special damages arising out of or related to this agreement (whether for support services, termination or otherwise). The only remedy that the parties may have for any claim arising out of or related to this agreement (whether for support services, termination or other) is to terminate this agreement. These terms apply regardless of the form or cause of action or the alleged basis of the claim (including negligence). This section does not apply in the case of fraud, gross negligence, death or personal injury caused by negligence, or to breaches of intellectual property rights, indemnification or confidentiality provisions of this agreement. This section is enforceable to the maximum**

ORDER - 6

**extent permitted by law.**  Yours and our total cumulative liability for loss or damage of any kind (including loss or damage caused by negligence) to the extent not excluded by this agreement is limited to 100% of the amount actually paid, and any amounts owed by you to us, during the then-current term of this agreement.  Such liability is reduced to the extent that the non-liable party or its agents caused or contributed to the loss or damage.

(Ex. A to Plaintiff's Opp.) (emphasis in original).

Based on Section 7.1, Defendants contend that Microsoft may only seek damages under the MSPP Agreement to the extent that Defendants committed fraud.  As discussed above, Defendants argue that Microsoft has failed to allege fraud with the particularity required by Rule 9(b).

In response, Microsoft offers several reasons why Section 7.1 does not bar its breach of contract claims.  Two of Microsoft's arguments are based on contentions that the company has already pleaded fraud with the particularity required by Rule 9(b).  However, as noted earlier, the Court finds that Microsoft has not satisfied the pleading standards of Rule 9(b) in its initial complaint.  As a result, Microsoft cannot proceed under the fraud exception to Section 7.1 unless and until Microsoft pleads fraud with the requisite particularity.

Microsoft also argues that its breach of contract claims fall into an exclusion in Section 7.1 which provides that the section does not apply "to breaches of intellectual property rights."  The Agreement does not define the term "breaches of intellectual property rights."  However, Section 4 of the Agreement is captioned "Intellectual Property," and Microsoft argues that Defendants violated various provisions of Section 4 "which compel compliance with the terms of the license agreement accompanying each piece of software and independently forbidding the distribution of software provided under the MSPP Agreement to defendants' customers." (Opp. at 12).

Defendants respond by asserting that the term "intellectual property rights" is "generally understood to mean rights protected by copyright, trademark, and patent law." (Reply at 3). Defendants suggest that such rights are limited to copyright, trademark, or patent infringement.  They argue that "licensing agreements restricting the resale or use of software vest the owners of that

ORDER - 7

software with added *contractual protections* as opposed to additional *intellectual property* rights." Id. (emphasis in original).

Under Washington law, undefined terms in a contract are given their plain, ordinary, and popular meaning, which may be ascertained by reference to standard English dictionaries. Wm. Dickson Co. v. Pierce County, 128 Wn. App. 488, 493 (2005). Clear and unambiguous terms may be interpreted by the courts as a question of law, while ambiguous terms are left to the trier of fact to interpret. Id. "An ambiguous provision is one fairly susceptible to two different, reasonable interpretations." Id.

Here, it appears that the undefined term "breaches of intellectual property rights" is fairly susceptible to two different, reasonable interpretations. It is not clear whether the term is limited to cases involving copyright, trademark, or patent infringement, or whether it may also include violations of software licensing agreements. As a result, a finder of fact could find that this exclusion applies to Microsoft's claims. Therefore, the Court will deny Defendants' motion to dismiss Microsoft's breach of contract claims.

3.  CPA Claims

Defendants also seek dismissal of Microsoft's claims under the Washington Consumer Protection Act (CPA). The five elements of a CPA claim are: "(1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff in his business or property; (5) which injury is casually linked to the unfair or deceptive practice." Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp., 122 Wn.2d 299, 312 (1993).

Defendants argue that Microsoft cannot satisfy the first (unfair or deceptive act) and third (public interest) elements of a CPA as a matter of law. Defendants argue that Microsoft is a multi-billion dollar corporation that is not representative of bargainers vulnerable to exploitation. In response, Microsoft argues that Defendants misapprehend their CPA claim. Microsoft suggests that

ORDER - 8

1  Defendants' advertising and resale of Microsoft software obtained through the Action Pack Initiative
2  program is the "unfair or deceptive" act or practice challenged in this litigation, and that the public
3  interest is affected because a substantial number of consumers have bought this software from
4  Defendants. Microsoft notes that in the Fisons case, the Washington Supreme Court held that "there
5  is no language [in the CPA] which requires that a CPA plaintiff be the consumer of goods or services"
6  Fisons, 122 Wn.2d at 313. At oral argument, Microsoft's counsel suggested that the company would
7  effectively be serving as a "private attorney general."

8  Although the question is close, the Court will deny Plaintiffs' request to dismiss Microsoft's
9  CPA claim pursuant to Rule 12(b)(6). While Microsoft's CPA claim is based on a creative theory and
10 may ultimately prove to be untenable, it does not appear beyond doubt that Microsoft can prove no set
11 of facts in support of its CPA claim that would entitle it to relief.

12 4.  <u>Conversion Claims</u>

13 Finally, Defendants seek dismissal of Microsoft's claims for conversion. Neither side devotes
14 significant attention to the conversion claims. In their opening brief, Defendants argue that "[w]ith
15 respect to Microsoft's claim for conversion, the transactions involving the acquisition of Microsoft's
16 CDs containing its recorded software constituted sales, albeit allegedly encumbered by 'use
17 restrictions,' within the meaning of the UCC. Because Microsoft has no legitimate title to the CDs in
18 question, its claim for conversion is groundless." (Opening Brief at 7). Defendant cites no authority
19 to support these assertions. In response, Microsoft argues that "[t]here is . . . no merit to
20 [Defendants'] conclusory and unsupported assertion that the UCC somehow bars Microsoft from
21 obtaining relief on its claim for conversion." (Opp. at 14).

22 It is well-established that "under Rule 12(b)(6), the defendant has the burden of showing that
23 no claim has been stated." <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991);
24 <u>see generally</u> 5B Charles Wright et al., <u>Federal Practice & Procedure</u> § 1357 (3d ed. 2004) ("federal
25 courts are in agreement that the burden is on the moving party to prove that no legally cognizable

26 ORDER - 9

claim for relief exists"). The Court finds that Defendants have not met their burden of showing that Microsoft's claims for conversion are subject to dismissal under Rule 12(b)(6), particularly in light of the lack of authority cited to support their arguments.

**Conclusion**

Consistent with the discussion above, Defendants' motion to dismiss is granted in part and denied in part. Defendants are correct that Plaintiff has not pleaded fraud with the particularity required by Rule 9(b). However, because it appears possible that Plaintiff may be able to correct this pleading defect, Plaintiff is granted leave to amend its complaint. Plaintiff shall file an amended complaint within twenty (20) days of the date of this order. The Court denies Defendants' motion to the extent it seeks dismissal of Plaintiff's breach of contract, Washington Consumer Protection Act, and conversion claims.

The clerk is directed to send copies of this order to all counsel of record.

Dated: May 16, 2006.

                              s/Marsha J. Pechman
                              Marsha J. Pechman
                              United States District Judge

ORDER - 10